75 So.2d 854

Harry S. REDMON

v.

SUB–SEWERAGE DISTRICT NO. 1 OF SEWERAGE DISTRICT NO. 1, PARISH OF JEFFERSON, State of Louisiana.

No. 42118.

Nov. 8, 1954.

Driscoll & Flanagan, New Orleans, for plaintiff-appellee.

McDonald & Buchler, Metairie, for defendant-appellant.

LE BLANC, Justice.

On January 17, 1951, the Police Jury of the Parish of Jefferson, acting on the authority granted to it by Article XIV, Section 37 of the Constitution of 1921, as amended by a Constitutional Amendment proposed by Act 543 of 1948 which was adopted by the people and had become effective in December of that year, and acting also under authority of Act 148 of 1948, created Sub-Sewerage District No. 1 of Sewerage District No. 1 of the Parish of Jefferson, State of Louisiana.

On February 14, 1951, the said Police Jury, acting as the governing body of said Sub-Sewerage District No. 1 ordered a special election to be held within the District, to authorize the issuance of bonds in the sum of $160,000 for the purpose of constructing sewers and sewerage disposal works, said bonds to be secured by an ad valorem tax on all taxable property within the district. The election, which was held on April 3, 1951, carried, and the results were duly promulgated on April 14, 1951. The bonds were offered for sale on May 21, 1951 but the bid received was not accepted.

Then on January 14, 1953, acting under the provisions of Act 495 of 1952, the Police Jury adopted proceedings for the re-organization of Sewerage District No. 1 and under the action taken the supervisors of said Sewerage District became the governing authority of the Sewerage District and Sub-Sewerage District No. 1.

On June 18, 1954, this new governing authority, as organized, re-offered for sale the $160,000 bonds authorized by the election held on April 3, 1951, setting the sale for Wednesday, August 4, 1954 at 10 o'clock a. m. On that day the bid of Pohl and Company, Inc. of Cincinnati, Ohio was accepted and issuance of the bonds was properly provided for.

After the bonds were prepared and made ready for delivery, the plaintiff herein, alleging himself to be a qualified resident taxpayer within the area of Sub-Sewerage District No. 1, instituted this proceeding on October 18, 1954 in which he asked for and obtained an order for a rule nisi for an injunction to restrain Sub-Sewerage District No. 1, its agents, employees and all other persons, firms or corporations acting or claiming to act on its behalf, from delivering the bonds which had been issued and from imposing taxes to pay therefor.

The defendant at once filed its answer to the rule and also filed an exception of no right or cause of action. The matter was then submitted to the district court on the exception and on an agreed stipulation, after which judgment was rendered overruling the exception. At the same time the court decided on the merits and granted plaintiff an injunction prohibiting and restraining the defendant from selling, issuing or distributing the bonds referred to. The defendant asked for and was granted a devolutive appeal to this Court and the case has been submitted on briefs, without oral argument, pursuant to Rule 14, Sec. 9 of the Rules of this Court.

The exception of no right or cause of action is based on the provisions of Section 14(n) of Article XIV of the Constitution of 1921 which deals with the matter of contesting the legality of bond elections. The sub-section reads as follows:

"For a period of sixty (60) days from the date of promulgation of the result of any election held under the provisions of this section, any person in interest shall have the right to contest the legality of such election, the bond issue provided for, or the tax authorized, for any cause; *after which time no one shall have any cause or right of action to contest the regularity, formality, or legality of said election, tax provision, or bond authorization, for any cause whatsoever*. If the validity of any election, special tax on bond issue authorized or provided for, held under the provisions of this section, is not raised within the sixty (60) days herein prescribed, the authority to issue the bonds, the legality thereof and of the taxes necessary to pay the same shall be conclusively presumed, and no court shall have authority to inquire into such matters. The provisions of this section shall not apply to the City of New Orleans." (Our italics.)

In this case the returns of the election held on April 3, 1951 were promulgated on April 14, 1951 and the plaintiff's suit was not filed until October 18, 1954, three years and six months later. Clearly therefore he is barred from contesting the legality of the election, for any cause whatsoever, unless for some reason it be shown that the provisions of the section of the Constitution do not apply.

■ The district judge, in his written reasons for overruling the exception, was of the opinion that the Constitutional provision related to some defect or "minor informality" in the handling of the election, whereas this case is one dealing with the basic authority of the Legislature to pass a law without authority under the Constitution, the contention being that Act 148 of 1948 under which the proceedings

leading to the bond election were initiated, is unconstitutional. We do not agree with this view of the trial judge.

The provisions of the Constitution which prescribe the limitation period in which a contest over a bond election may be instituted are very clear and specific and they have been applied by this Court in cases almost too numerous to mention. In many of the cases the decisions emphasize the language of the provision to the effect that after this sixty day period granted to any person in interest to attack the election, no person shall be permitted to contest it *"for any cause whatsoever"*, that its legality *"shall be conclusively presumed, and no court shall have authority to inquire into such matters."* One of these cases is Miller v. Town of Bernice, 186 La. 742, 173 So. 192. Surely the construction of that language of the provision would seem to extend its application beyond mere defects or minor informalities or irregularities in holding the election.

■ The first case which came to this Court after the adoption of the Constitution of 1921 in which the provision was construed is that of Roberts v. Evangeline Parish School Board, 155 La. 331, 99 So. 280, 282. A bond election had been held under the provisions of Act 152 of 1920, and more than sixty days after the promulgation of the returns, suit was brought by certain taxpayers to have it set aside. The attack was based on the ground, among others, that Act 152 of 1920 was in conflict with certain provisions of the Constitutions of 1898, 1913 and 1921. The Court in the prevailing opinion pointed to the confusion which existed in the jurisprudence in cases where the Court had to apply and enforce certain statutory provisions limiting the time in which the validity of a tax or the issuance of bonds dependent upon a tax could be judicially tested, and stated that it was during this condition of uncertainty that the Constitutional Convention of 1921 met and declared, "in terms too plain to be mistakable," under paragraph (n) of section 14 of Article 14 "that after 60 days the bonds and taxes shall be conclusively held to be valid, that no one shall have the right to question their validity, that no court shall have authority to entertain any controversy over their validity." There were some dissents in the case, and one of the Justices handed down a dissenting opinion which apparently was based on the same reasons given by the district judge in this case. However in the subsequent case of McGuffie v. Police Jury of Catahoula Parish, 183 La. 391, 163 So. 841, 843, the Court referred to the very strong and positive language and the holding in the Roberts case and stated that it had been approved and followed in a number of subsequent decisions, citing seven spe-

cific cases. Mention is made that in several of those that are cited, "the election proceedings taken, the bonds issued, and the taxes provided were attacked *as unconstitutional.*" (Our emphasis.) We need to refer to only two of those in which the elections were contested on the ground that the ordinances calling the election were in contravention of certain articles of the Constitution, to fortify the view that it never was intended that the sixty day limitation prescribed in the Constitution itself should be restricted to cases involving mere irregularities but that it is meant to apply to *all* cases including those in which the election is attacked on the basis of the illegality or constitutionality of the statutes or ordinances under which it had been called and held. Roy v. City of Lafayette, 168 La. 1081, 123 So. 720; Fontenot v. Miller Gravity Drainage District, 159 La. 302, 105 So. 351.

From this it follows that the exception filed in this case will have to be sustained and this will lead to a reversal of the judgment of the court below.

For the reasons stated it is ordered, adjudged and decreed that the judgment appealed from be reversed, annulled and set aside and it is further ordered, adjudged and decreed that the exception of no right or cause of action filed on behalf of the defendant be sustained and that plaintiff's suit be dismissed at his costs.